## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

| | |
|---|---|
| **WANDA ALSTON** ) | CASE NO. *CAL09-20834* |
| 3209 SAVILLE LANE ) | |
| BOWIE MARYLAND 20721 ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **LITTON LOAN SERVICING LP** ) | |
| 4828 LOOP CENTRAL DRIVE ) | |
| HOUSTON TEXAS 77081 ) | |
| ) | |
| **REGISTERED AGENT:** ) | |
| CSC-LAWYERS INCORPORATING ) | |
| SERVICE COMPANY ) | |
| 7 SAINT PAUL STREET SUITE 1660 ) | |
| BALTIMORE MARYLAND 21202 ) | |
| ) | |
| **LARRY B. LITTON SENIOR** ) | |
| 4828 LOOP CENTRAL DRIVE ) | |
| HOUSTON TEXAS 77081 ) | |
| ) | |
| **LARRY B. LITTON JUNIOR** ) | |
| 4828 LOOP CENTRAL DRIVE ) | |
| HOUSTON TEXAS 77081 ) | |
| ) | |
| **SAFEGUARD PROPERTIES INCORPORATED** ) | |
| 650 SAFEGUARD PLAZA ) | |
| BROOKLYN HEIGHTS OHIO 44131 ) | |
| ) | |
| **&** ) | |
| ) | |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY** ) | |
| 300 SOUTH GRAND AVENUE SUITE 3950 ) | |
| LOS ANGELES CALIFORNIA 90071-3175 ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff WANDA ALSTON, by and through counsel, C. Sukari Hardnett and the Law

Office of C. Sukari Hardnett, brings this civil action against LITTON LOAN SERVICING LP,

LARRY B. LITTON SENIOR, LARRY B. LITTON JUNIOR, SAFEGUARD PROPERTIES

INCORPORATED and DEUTSCHE BANK NATIONAL TRUST COMPANY on the grounds

and the amounts set forth herein:

## I. PRELIMINARY STATEMENT

This is an action for violations of the Maryland Consumer Protection Act ("MCPA"),

Trespass and Conversion. Plaintiff seeks an award for actual and punitive damages, pre and post

judgment interest, attorney's fees and all costs incurred in connection with the filing of this

action.

## II. PARTIES

1.      Plaintiff Wanda Alston is a resident of the state of Maryland.

2.      Defendant Litton Loan Servicing, LP ("Litton Loan") is a Delaware corporation

that transacts business in Prince George's County, Maryland.   Records from the Maryland

Department of Assessments and Taxation (MDAT) indicate that Litton Loan's authority to do

business in the state of Maryland has been forfeited, and its authority to do business in the State

of Maryland has been terminated.

3.      Defendant Larry B. Litton Senior is an officer and/or owner of Litton Loans who

is personally liable for the claims against Litton Loans in this action, since Litton Loans is not

recognized as a corporation duly authorized to transact business in the state of Maryland.

4.      Defendant Larry B. Litton Junior is an officer of Litton Loans who is personally

liable for the claims against Litton Loans in this action, since Litton Loans is not recognized as a

corporation duly authorized to transact business in the state of Maryland.

5.      Defendant Safeguard Properties, Inc. is an Ohio Corporation that transacts

business in Prince George's County Maryland.

6.      Defendant Deutsche National Bank Trust Company is a California Corporation that is Trustee for the Deed of Trust that is the subject of this action. It is liable for the actions and omissions of its authorized agents and representatives undertaken in connection with the Deed of Trust.

### III. JURISDICTION & VENUE

7.      This court has personal jurisdiction over the Defendants, pursuant to Maryland Code Ann. § 6-103(b)(1), as Defendants transact business and perform services in the state of Maryland.

8.      Prince George's County Maryland is the proper venue for this action pursuant to Maryland Code Ann. § 6-201(b), as it is the county in which the cause of action that gives rise to this action arises.

### IV. FACTUAL ALLEGATIONS

9.      On December 7, 2004, Plaintiff purchased a five bedroom three bath home in Prince George's County, Maryland (hereinafter identified as the "Property"). The Property is Lot Number 19 in Block Letter "E" in a subdivision known as Brightleaf Knoll. The Property sits on approximately a one acre corner lot.

10.      Plaintiff paid $300,000.00 for the Property. Plaintiff made a $75,000.00 down payment, and she executed a Deed of Trust and Deed of Trust Note with Encore Mortgage Company to secure payment of the note and to encumber the Property.

11.      On October 31, 2006, Plaintiff refinanced her mortgage loan with Freemont Investment and Loan. To secure payment of the Note and to encumber the Property, Plaintiff

executed a new Deed of Trust and Deed of Trust Note recorded among the land records of Prince George's County in Liber No. 27122, Folio 731.

12.     Freemont Investment and Loan sold Plaintiff's mortgage to Defendant Litton Loan, who at all times relevant to this action, held and serviced Plaintiff's mortgage loan.

13.     When Plaintiff purchased the Property, it was in need of substantial rehabilitation. Plaintiff re-did the entire interior of the Property, including the walls, ceilings and doors. Plaintiff installed new carpeting, replaced the appliances, the furnace, the heating and air conditioning ducts, all of the locks, and installed ceiling fans and performed other work and upgrades to the Property.

14.     Plaintiff also put in tile floors in the hallways and marble floors in the bedroom. Plaintiff fully finished the basement: it had two bedrooms, a kitchen and bath. Plaintiff paid over $38,000.00 for a new pool, over $10,000.00 for a fence around the Property and approximately $3,000.00 for shrubs.

15.     In total, Plaintiff paid over $60,000.00 to renovate and to upgrade the Property. Because of all the work and upgrades, the Property appraised for $490,000.00 in October 2004.

16.     Understandably, after all that she put into the Property, Plaintiff felt that this was not only her home that it was her castle.

17.     Plaintiff could never expect that while she was staying at the home of a family member when her cancer recurred, and she was recuperating from surgery and could not walk, that Defendant Litton Loan and its agent Defendant Safeguard Properties would burglarize Plaintiff's home, steal her appliances, destroy her personal property, and change the locks on the doors so that the Plaintiff could not enter her own Property.

18.     Defendants took all of these proscribed actions without seeking any form of legal redress, without any foreclosure sale, any writ or restitution, or any other judicial or legal process.

19.     The problems began in 2008.  Up to that time, Plaintiff had never been late on a mortgage payment.  However, during that year, Plaintiff was physically injured and diagnose with cancer.  As a result, Plaintiff could no longer maintain full time employment.  Additionally, during that time Plaintiff was going through a divorce.

20.     As a result of these financial hardships, Plaintiff fell behind on her mortgage payments.

21.     Plaintiff applied for loan modification with Defendant Litton Loan based upon her financial hardship.  Plaintiff also contacted and sought assistance from a nonprofit HUD certified counseling agency, the Neighborhood Assistance Corporation of America (NACA).

22.     Plaintiff submitted all of the documents requested by Defendant Litton Loan, and which its authorized agents and representatives indicated was necessary for the Plaintiff to provide in order for her to enter into a loan modification agreement.

23.     Whenever Plaintiff called and spoke with agents and representatives of Litton Loan regarding her loan modification, she would be told that Litton Loan was working on it.  However, Litton Loan delayed and failed to timely enter into any loan modification agreement with the Plaintiff.

24.     In November 2008, Plaintiff became ill again.  Her cancer recurred, and she was recovering from surgery.  Plaintiff stayed with a family member for about a month.  When she came back to her Property, Plaintiff was flabbergasted: Defendant Litton Loan contracted

Defendant Safeguard Properties, who broke into Plaintiff's home, removed the locks, and padlocked the Property to bar the Plaintiff from having any access to it.

25.     Defendants, acting through their authorized agents and representatives, damaged the windows and broke off the locks to the Property and committed burglary and trespass.

26.     When Plaintiff arrived home that day in December 2008, it was a day that she will never forget. Plaintiff had her daughter and three foster children with her. Plaintiff called Litton Loan detailing what had happened to her Property and to inquire if they knew what was going on.

27.     The representative with whom the Plaintiff spoke acknowledged that Defendant Litton had in fact authorized the burglary and trespass. He was rude and could care less about the fact that Defendants, acting through their authorized agents and representatives had engaged in such misconduct.

28.     Plaintiff objected as she was in loan modification and at that time her home was not in foreclosure. Plaintiff asked whether the Loan Modification Department communicated with his department.

29.     His response was that "we don't have to." He also told the Plaintiff that "there was nothing that you can do about it," and "there is nothing that you can do to us." Plaintiff also spoke with a representative by the name of Ms. Williams who told the Plaintiff in response to her protests that "we can do whatever we want." All of this evinced actual malice.

30.     Litton Loan finally agreed to send someone out who had a key to the Property, and it directed the Plaintiff to call Safeguard Properties to obtain access.

31.     The representative of Defendant Safeguard Properties with whom the Plaintiff spoke acknowledged that Defendant Litton had retained Defendant Safeguard Properties to do

what they did.  He stated that Defendant Safeguard Properties' interest was Defendant Litton Loans' interest.

32.     Plaintiff had to wait outside for over three hours before an agent and representative of the Defendants finally showed up with the keys.

33.     When Plaintiff entered the Property, she could not believe what she saw: Defendants ripped the air conditioning unit out and rendered inoperable Plaintiff's stove and refrigerator.  Defendants damaged the ceilings and walls.  Defendant removed and stole the vanity out of one of the bathrooms, stole the washer and dryer, and stole the blinds in the Property.

34.     Defendants sawed off the pipes to the water tank.  Plaintiff's personal property was strewn about the Property. The Berber Carpet in the basement was damaged.  Defendants took the French doors in the Property off the hinges and pulled out and disconnected the stoves as if in preparation to return and steal them as well like the other things that Defendants had converted from the Plaintiff.  Defendants cut the wires to the pool lights and stole electrical equipment necessary to run the pool and the pool cover and pumps.

35.     Defendant Safeguard Properties had placed red tags throughout the Property.  It also left notice that it had allegedly weatherized the Property and a sign in sheet indicating that it was posted by Safeguard Properties on behalf of Defendant Litton to track all entrants to the Property.

36.     Plaintiff reported the state of her home and what had transpired to Defendant Litton Loans and Defendant Safeguard Properties.  Neither cared.

37.     Plaintiff had to spend approximately $10,000.00 to repair and to replace what Defendant had stolen and damaged.

38.    Plaintiff returned to the Property and provided notice to both Defendant Safeguard Properties and Defendant Litton Loans that she was residing in her Property and that they were not to trespass upon it.

39.    Nonetheless, believe it or not one day in March 2009, an authorized representative of Defendant Litton Loans and Defendant Safeguard Properties came to Plaintiff's home ostensibly to do again what the Defendants had done before.

40.    Fortunately, Plaintiff was present at the time, and she prevented him from burglarizing and stealing from the Property.   Once again Plaintiff contacted Defendant Litton and reported what had occurred.

41.    At this time, the authorized agent and representative with whom the Plaintiff spoke at Litton Loans told the Plaintiff that they could do what they want because her house was up for foreclosure sale.

42.    Plaintiff is a good woman.  She has care and custody of three foster children. Plaintiff is the type of person who donates food to three families a month and who would regularly leave bulk food in her yard for the benefit of elderly residents in her neighborhood. Plaintiff does not deserve what the Defendants caused to have happen to her.

43.    The actions of the Defendants have caused the Plaintiff significant stress, emotional harm and other damages.  Plaintiff was diagnosed with breast cancer, and she has been in remission since 1998. However, the actions of the Defendants caused the Plaintiff to become ill and have caused a noted increase in her blood pressure.

44.    One could imagine that after enduring the burglary and robbery of one's home, and with no telling when the Defendants could encroach upon her again, the Plaintiff has been subjected to significant stress.

8

45.    Plaintiff's physician diagnosed the Plaintiff with high blood pressure and informed her that the stress that she was suffering was exacerbating her illness.

46.    Accordingly, it is on these grounds and for these reasons that the Plaintiff now files this legal action to seek redress for the damages which she suffered and which was a direct and proximate cause of the actions of the Defendant as detailed herein and to be presented in this action.

## COUNT I

### DECEPTION, FRAUD, FALSE PRETENSE, MISREPRESENTATION, KNOWING CONCEALMENT, SUPPRESSION, OR OMISSION OF ANY MATERIAL FACT

#### Violations of the Maryland Commercial Law Code Ann. § 13-301(9)(i)

47.    Paragraphs nine (9) through forty-six (46) are incorporated by reference as if fully set forth herein.

48.    Plaintiff is a "consumer[s]," pursuant to Md. Comm. Law Code Ann. § 13-101(c)(1), in that they are the actual purchasers and recipients of consumer goods, services, and/or consumer credit

49.    The mortgage loan, deed of trust, and the Property constitute "merchandise," pursuant to Md. Comm. Law Code Ann. § 13-301 (f), as they are commodities.

50.    Defendants are "merchant[s]," pursuant to Md. Comm. Law Code Ann. § 13-301(g), in they directly and/or indirectly either offers, or makes available to consumers, consumer goods, consumer services, or consumer credit.

51.    Accordingly, the facts and circumstances set forth herein are regulated by the provisions of the Maryland Consumer Protection Act, Md. Comm. Law Code § 13-101 *et* seq.

52.    Md. Comm. Law Code § 13-301(9)(i) proscribes that unfair or deceptive trade practices include any:

Deception, fraud, false pretense, false promise, misrepresentation, knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely upon the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service;

53.    Defendants violated this provision of the Maryland Commercial Law Code by the use of deception, fraud, knowing concealment, suppression, and omission of material fact, with the intent that the Plaintiff rely thereupon including:

(a) Unlawfully entering Plaintiff's property without any legal redress, any writ or restitution, or any other judicial or legal process;

(b) Taking Plaintiff's personal property and fixtures;

(c) Deceptively purporting to be negotiating a loan modification while still pursuing foreclosure proceedings;

(d) Suppression of the fact that Defendants were entering and barring Plaintiff from her home;

(e) Concealing the fact that while Plaintiff was in the process of loan modification that her home could still be foreclosed upon;

(f) Suppressing and concealing from the Plaintiff the fact that her home was scheduled for foreclosure auction;

(g) Suppressing and concealing from the Plaintiff that Defendants had no legal right to enter her home and to bar her from the property;

(h) Deceptively failing to enter into a loan modification with the Plaintiff based upon equitable terms that she could afford as represented.

WHEREFORE, Plaintiff seeks judgment against the Defendants on Count I, in the full amount of her actual damages in an amount to be proven at trial, plus pre and post judgment interest, costs, attorney fees, and all such further relief as this court deems just and proper.

**COUNT II**
**FALSE AND MISLEADING WRITTEN**
**ORAL AND OTHER REPRESENTATIONS**
**Violations of Maryland Commercial Law Code § 13-301(1)**

54.     Paragraphs nine (9) through forty-six (46) are incorporated by reference as if fully set forth herein.

55.     Md. Comm. Law Code § 13-301(1) proscribes that unfair or deceptive trade practices include any:

> False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers.

56.     Defendants violated this provision of the Maryland Consumer Protection Act, by the following false and misleading written, oral, and other representations of its authorized agents and representatives, which had the capacity, tendency and effect of deceiving and misleading consumers, including the following:

(a) Falsely purporting to be negotiating a loan modification while still pursuing foreclosure proceedings;

(b) Misleading the Plaintiff that while Plaintiff she was in the process of loan modification that her home would not be subject to foreclosure proceedings;

(c) Misleading the Plaintiff that Defendants had the legal right to enter her home and to bar her from the property.

WHEREFORE, Plaintiff seeks judgment against the Defendants on Count II, in the full amount of her actual damages in an amount to be proven at trial, plus pre and post judgment interest, costs, attorney fees, and all such further relief as this court deems just and proper.

## COUNT III
### TRESSPASS

57.    Paragraphs nine (9) through forty-six (46) are incorporated by reference as if fully set forth herein.

58.    Defendants interfered with the Plaintiff's interest in exclusive possession of the Property and land by entering or causing people to enter the property and land.

59.    Defendants are subject to liability to the Plaintiff for its unlawful trespass, as they intentionally entered land and property that was owned and in the possession of the Plaintiff.

60.    As a result of this trespass Defendants are liable to the Plaintiff for the difference between the value of the land and property before the trespass and the value of the land afterward and/or for the cost of reasonable restoration.

61.    Defendants acted with malice evinced through its conduct of trespassing upon the Plaintiff's property, willful burglary, barring of the Plaintiff from her Property, and its conduct and statements in connection therewith.


WHEREFORE, Plaintiff seeks judgment against the Defendants on Count III, in the full amount of her actual damages in an amount to be proven at trial, and for Ten Million Dollars ($10,000,000.00) in punitive damages, plus pre and post judgment interest, costs, attorney fees, and all such further relief as this court deems just and proper.

## COUNT IV
### CONVERSION

62.   Paragraphs nine (9) through forty-six (46) are incorporated by reference as if fully set forth herein.

63.   The actions of the Defendants as set forth herein constitutes the intentional tort of conversion, which encompasses any wrongful exercise or assumption of authority over the goods of another, depriving him or her of their possession, and any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the rights of the owner.

64.   Defendants wrongfully exercised assumption of authority over the Plaintiff's Property.  The actions of the Defendants, as detailed herein, constitute an act of dominion wrongfully exerted over the property of the Plaintiff, in denial of and inconsistent with her ownership rights.

65.   The Defendants have engaged in the willful and tortuous conversion of Plaintiff's property, appliances and fixtures which belong solely and exclusively to the Plaintiff, and despite notice and knowledge of these facts, the Defendants have continued to refuse to effect the return to the Plaintiff.

66.   Plaintiff has been forced to endure and suffer the burglary and loss of her personal property, appliances and fixtures.

67.   Plaintiff requests exemplary damages due to the egregious conduct of the Defendants, for the protection of the public and other citizens like the Plaintiff, as a punishment to the Defendants for their wrongful actions, and as a warning and example to deter the Defendants from engaging in any such further prescribed conduct.

13

68.     The Defendants acted wantonly, oppressively, and recklessly and with such malice as implies a spirit of mischief or criminal indifference to its civil obligations under state and federal law.

69.     The Defendants engaged in misconduct, which reflects such recklessness or gross negligence that evinces a conscious disregard of the rights of the Plaintiff.

70.     Defendants have acted with malice.  Their wrongful actions have continued to oppress and harm the Plaintiff.  The willful and wanton conduct of the Defendants imports knowledge and consciousness that injury would result from their actions.  The actions of the Defendants were not mere inadvertence, mistake or an accidental occurrence.

71.     Accordingly, the Plaintiff requests that the Court assess substantial punitive damages against the Defendants due to their willful and wanton conduct.


WHEREFORE, Plaintiff seeks judgment against the Defendants on Count IV, in the full amount of her actual damages in an amount to be proven at trial, and for Ten Million Dollars ($10,000,000.00) in punitive damages, plus pre and post judgment interest, costs, attorney fees, and all such further relief as this court deems just and proper.

## JURY DEMAND

The Plaintiff Requests a Trial by Jury on all Issues.

Respectfully submitted,
WANDA ALSTON

By: _____
        Counsel

C. Sukari Hardnett, Esquire
Law Office of C. Sukari Hardnett
1111 Bonifant Street
Silver Spring, MD 20910
Tel: (301) 587-7001